CLERK'S OFFICE U.S. DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

DEC 15 2023

LAURA A. AUSTIN, CLERK
BY: /s/ M. M.
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## Charlottesville Division

| | |
|---|---|
| ALAELDIN ABDELBAKI<br><br>Plaintiff,<br><br>v.<br><br>RECTORS AND VISITORS OF THE UNIVERSITY OF VIRGINIA,<br><br>KEN ONO,<br>  in his individual capacity,<br><br>JIM ROLF,<br>  in his individual capacity.<br><br>EVANGELOS DIMOU,<br>  in his individual capacity<br><br>Defendants. | Civil Action No.<br><br>3:23-cv-00071<br><br><br>(Jury Trial Requested) |

## COMPLAINT

Plaintiff Alaeldin Abdelbaki ("Plaintiff" or "Abdelbaki") for his Complaint against Defendant University of Virginia ("UVA"), Ken Ono, Jim Rolf, Evangelos Dimou, (collectively, "Defendants"), alleges as follows:

1.  Plaintiff brings this action against the Defendant for damages arising out of violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. 2000e *et seq.*, for retaliation in the terms of his employment, and race discrimination and retaliation for violations of the Fourteenth Amendment.

1

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over all Counts pursuant to 28 U.S.C. §1331 because those claims arise under the United States Constitution and laws of the United States.

3. Jurisdiction to grant a declaratory judgment is conferred by 28 U.S.C. §§ 2201-02.

4. Prior to instituting this action, Plaintiff filed administrative claims with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination for race, national origin, religion, and retaliation for alleging unlawful discrimination.

5. The EEOC issued Plaintiff a Right to Sue Letter on September 18, 2023.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events, acts, and/or omissions giving rise to Plaintiff's claims occurred in the State of Virginia. Specifically, they occurred in Charlottesville, Virginia.

## PARTIES

7. Abdelbaki is an Arab/Middle Eastern man, who is a resident of Virginia. He is Muslim and of African descent (Egyptian). At (nearly) all times relevant to the facts alleged in this lawsuit, he was employed by Defendant.

8. Defendant is a mid-sized public university located in Charlottesville, Virginia.

9. Defendant Ken Ono, as former department chair of mathematics, is now the STEM advisor to the Provost and Marvin Rosenblum professor of mathematics. He is a Japanese-American male.

10. Defendant Jim Rolf serves as the director of lower-level courses in the mathematics department. He is a white male.

11. Defendant Evangelos Dimou serves as an assistant professor (general faculty) of mathematics. He is a white male.

**STATEMENT OF FACTS**

12. Abdelbaki was employed as an adjunct lecturer of mathematics at UVA between January 2022 to May 2022. Before then, he served an adjunct lecturer of mathematics between August 2014 and May 2015, and then was promoted to full-time lecturer between August 2017 to May 2017. He then taught in the subsequent Fall 2017 semester as an adjunct lecturer before deciding to discontinue employment at UVA due to relocation.

13. Since May 2015, Abdelbaki consistently yielded very high marks on course evaluations while teaching in the mathematics department.

14. In or around September 2021, Abdelbaki was interviewed by Mikhail Ershov (henceforth "Ershov") and informally offered to teach courses as an adjunct instructor in the mathematics department, beginning in January 2022. Ershov is a professor of mathematics and serves in an administrative role with assigning course schedules and other related duties.

15. Ershov stated to Abdelbaki: "So let me also tell you the formal hiring process, so basically, we're doing this because you haven't taught at UVA for a while. If you had just a one-year break then we would just renew your contract, but now we just sort of just have to start over."

16. Sometime in Fall 2021, Abdelbaki received an official letter of employment from UVA to begin teaching in January 2022.

17. In January or February 2022, a student in Abdelbaki's Math 1140 course complained to Rolf that Abdelbaki taught too fast. Abdelbaki had successfully taught Math 1140 several times prior to January 2022 at UVA.

18. In January or February 2022, Rolf observed one of Abdelbaki's Math 1140 lectures. After class, Rolf posed to Abdelbaki the question: "So what went wrong and what didn't go wrong?" Abdelbaki responded that everything went well, but that it would have been ideal to

3

conduct collaborative groupwork, but that the time limitations of taking a quiz and lecturing did not allow for this.

19. Subsequent to this, Rolf met with Abdelbaki to discuss his teaching performance via Zoom. Despite Abdelbaki not even fully completing one section of material, Rolf concurred with the student that "you put information on the board pretty fast."

20. In January or February 2022, Rolf moved the student (who had accommodations) to a different section of Math 1140, without ever notifying Abdelbaki.

21. Following this, Abdelbaki contacted Ershov and expressed concerns that Rolf had completely mischaracterized his teaching as being too fast. Abdelbaki provided an audio recording to Ershov of the lecture that Rolf observed. Ershov concluded that the "pace was fine."

22. In March or April 2022, Dimou began to display increasingly intimidating behavior towards Abdelbaki, perhaps best described in the form of "microaggressions," "ticked off," or otherwise behaviors exhibiting his displeasure or annoyance with Abdelbaki.

23. Abdelbaki spoke with other members of the mathematics department regarding both Rolf and Dimou, and they all concurred with the aforementioned characterizations of Rolf and Dimou.

24. Over the course of the semester, Abdelbaki began to suffer from extreme depression and sadness based on treatment from both Rolf and Dimou. As a result, Abdelbaki contacted Human Resources to request the possibility of taking leave, to which they responded that adjunct faculty cannot submit leave, and that the matter should be taken up with the employee's supervisor.

25. In March or April 2022, Abdelbaki emailed Ono, citing that he felt he was being harassed and mistreated by Rolf and Dimou, and that due to his deteriorating mental health while

working under their supervision, Abdelbaki requested that another instructor teach his two courses for the remaining month of the semester.

26. Initially, Abdelbaki was relieved of his teaching responsibilities by Ono; however, after Ono had contacted his associate dean (and the provost), Ono called Abdelbaki on a Sunday morning and was infuriated with him.

27. Apparently, Ono had made a "mistake" by relieving Abdelbaki of his courses. Ono expressed to Abdelbaki that he (Ono) was being reprimanded by the University for taking such actions: "I was reprimanded for this, I wasn't fired, but I was reprimanded for it," "Ala, this got all the way to the provost's office," "You've created a mess," "Ala, the associate dean (Laura Galloway) called me at 7 in the morning," "The university is already conducting an investigation, he (Jim Rolf) had an incident with a graduate student," "I don't know if you planned all of this out. This could make the news."

28. In the end, an agreement was made that Abdelbaki could teach both his courses via Zoom, and without any contact with Rolf or Dimou. Abdelbaki agreed to these terms.

29. On April 7, 2022, Abdelbaki sent Ono the following email expressing concerns of his future employment status: "Also, after we spoke on Sunday, I wanted to respectfully disagree that I have 'created a mess.' I have done everything to withhold information regarding personal communications with Rolf so that this situation did not escalate to what it has become. The only person that I contacted was Misha (Ershov), and I only sent him one audio file (this was of my teaching the day that Rolf observed my class) and I mentioned a few things that Rolf stated to me, but strictly regarding my teaching. I am concerned about any future employment here at UVA, but I will not waiver in my convictions that he has harassed me and created a toxic work environment.

5

It just reached the point where it was no longer bearable. Nonetheless, thanks again for all of your efforts."

30. Ono's was mute regarding Abdelbaki's concerns, responding: "I think we have moved on and are proceeding towards a satisfying conclusion to the semester."

31. In summer 2022, Abdelbaki reapplied for the same adjunct teaching position that he held in spring 2022 for the upcoming fall 2022 and spring 2023 semesters; however, Abdelbaki was not hired, despite Ershov's tacit implication that Abdelbaki would be rehired, without interview, pending satisfactory standing.

32. The individual hired in place of Abdelbaki had never taught at UVA before, and his race is Caucasian. Abdelbaki had several years of teaching experience in UVA's mathematics department, with very high marks on course evaluations, and yet was not re-hired, clearly since Ono was upset that Abdelbaki had gotten him "in trouble" with higher administrators at the University.

33. In Fall 2022, Abdelbaki was contacted by members of the mathematics department, stating that Jim Rolf was being investigated for discriminating against other mathematics employees. Abdelbaki related his side of the story to a mathematics faculty member who was investigating the matter and served as head of the DEI (Diversity-Equity-Inclusion) for mathematics. The investigator relayed to Abdelbaki that Rolf had received numerous complaints, one of which was from a current mathematics instructor who identified as being transgender. The investigator also stated that Ono was not "the type" to alter any administrators supervisory duties due to misbehavior, or otherwise (including Rolf).

34. Beginning August 2022, UVA promoted Rolf from associate professor to full professor.

## COUNT ONE
## RETALIATION
### [Title VII, 42 U.S.C. § 2000e, *et seq.*]

1. Abdelbaki re-alleges every allegation contained in this Complaint as if set forth fully herein.

2. At all relevant times, Defendant was and continues to be an "employer" within the meaning of Title VII.

3. Throughout Abdelbaki's employment with Defendant, Abdelbaki was an "employee" within the meaning of Title VII.

4. Abdelbaki made reasonable complaints about harassing and intimidating behaviors made towards him.

5. As a result of Abdelbaki's complaint made to Ono, UVA did not rehire Abdelbaki.

6. By the acts and omissions alleged above, Defendant intentionally deprived Abdelbaki of equal employment opportunities, and otherwise adversely affected his status as an employee.

7. As a direct, proximate, and foreseeable result of Defendant's conduct, Abdelbaki suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

8. In acting as alleged above, Defendant acted with the wrongful intention of injuring Abdelbaki, from an improper motive amounting to malice, and in conscious disregard of Abdelbaki's rights. Abdelbaki is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

9. As a result of Defendant's conduct as alleged herein, Abdelbaki is entitled to reasonable attorneys' fees and/or costs of suit as provided for by applicable law.

## COUNT TWO
## RACE, RELIGION, and NATIONAL ORIGIN DISCRIMINATION
### [Title VII, 42 U.S.C. § 2000e, *et seq.*]

1. Plaintiff re-alleges every allegation contained in this Complaint as if set forth fully herein.

2. At all relevant times, Plaintiff was a qualified employee at UVA.

3. At all relevant times, Defendant was and continues to be an "employer" within the meaning of Title VII.

4. Defendant held Plaintiff to higher performance standards than UVA employees who were white and non-Muslim.

5. Defendant hired and preferred white employees in those serving similar positions as Abdelbaki.

6. Defendant subjected Plaintiff to discipline for alleged infractions for which employees at UVA who were white and non-Muslim were not subjected.

7. Defendant discriminated against Plaintiff on the basis of his race, religion, and/or national origin by refusing to provide Plaintiff with the same employment rights as other UVA employees who were white and non-Muslim.

8. By the acts and omissions alleged above, Defendant, in violation of Title VII, intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his statuses as an employee.

9. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered a loss of employment benefits, and career path opportunities, in an amount to be proved at trial.

10. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

11. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and/or costs of suit as provided for by applicable law.

## COUNT THREE
## HOSTILE WORK ENVIRONMENT
## BASED ON RACE, RELIGION, and NATIONAL ORIGIN
### [Title VII, 42 U.S.C. § 2000e, *et seq.*]
*Against Defendant University of Virginia*

12. Abdelbaki re-alleges every allegation contained in this Complaint as if set forth fully herein.

13. Defendant's employees repeatedly subjected Plaintiff to unwelcome harassment regarding the terms and conditions of his employment.

14. Plaintiff's supervisors engaged in demeaning and hostile conduct towards Plaintiff during the course of his employment with Defendant.

15. Similarly-situated individuals who were white and non-Muslim were not treated the same by Defendant.

16. Similarly-situated individuals who had not engaged in protected activity were not treated the same by Defendant.

17. Defendant's harassing behavior towards Plaintiff was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and created a discriminatory and abusive working environment.

18. Plaintiff repeatedly complained to Defendant about the harassment and/or hostile work environment, but Plaintiff's complaints were largely ignored.

19. Defendant failed to take the appropriate corrective action as required by Title VII, including properly disciplining the charged official(s) and preventing further harassment of Plaintiff.

20. As a result of Defendant's unlawful actions, Plaintiff is entitled to monetary and non-monetary damages for severe emotional distress, mental anguish, and humiliation.

## COUNT FOUR
**Fourteenth Amendment ~ Race Discrimination and Retaliation**
**42 U.S.C. §1983**
*Against Defendants Ono, Rolf, Dimou*
*(collectively, the "Personal Defendants")*

21. Abdelbaki incorporates by reference each and every preceding paragraph, as though set forth fully herein.

22. During employment at UVA, Abdelbaki had a right to be protected from racial discrimination in the terms of his employment.

23. The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the laws of the United States, with violations thereof giving rise to claims for relief under 42 U.S.C. § 1983.

24. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws" by persons acting under the color of law. The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to the Defendant in this action throughout the time period of the allegations of this Complaint.

25. Defendant made employment-based decisions based on Abdelbaki's race, i.e., Arab/Middle Eastern.

26. Defendant gave preferential treatment to College employees who were white.

27. Defendant knowingly permitted Abdelbaki work in a racially hostile work environment.

28. Defendant intentionally deprived Abdelbaki of the same terms and conditions of employment available to college employees who were white.

29. Defendant intentionally denied Abdelbaki the opportunity to work in an environment that was free from unlawful discrimination.

30. Defendant's discriminatory conduct resulted in unjustified disciplinary action and performance counseling.

31. Defendant hired and preferred white employees in those serving similar positions as Abdelbaki.

32. Ono acted under color of state law when he refused to rehire Abdelbaki, with full knowledge of his experience as a UVA mathematics instructor, in favor of a new rehire, who was white.

33. As a direct, proximate, and foreseeable result of Defendant's unlawful acts and omissions, Abdelbaki suffered a loss of employment benefits in an amount to be proved at trial.

34. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Abdelbaki suffered, and will continue to suffer, physical, mental, and psychological damages including extreme anxiety, mental anguish, and emotional distress in an amount to be proved at trial.

35. As a result of Defendant's conducts as alleged herein, Abdelbaki is entitled to reasonable attorneys' fees and/or costs of suit as provided by applicable law.

36. Defendant's unlawful conduct was egregious, outrageous, and malicious and was in conscious disregard of Abdelbaki's rights, as a result Abdelbaki is entitled to punitive damages.

## JURY DEMAND

37. Abdelbaki demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Alaeldin Abdelbaki, prays for the following relief:

1. Entry of judgment in favor of Plaintiff and against Defendant for:

   a. Back pay;

   b. Front pay;

   c. Compensatory damages;

   d. Liquidated damages;

   e. Reasonable attorneys' fees and court costs associated with this suit; and

   f. Awarding prejudgment interest, costs and disbursement as appropriate herein;

2. Declare, pursuant to 28 U.S.C. § 2201, that through their acts and omissions, Defendant maintained a racially hostile work environment in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and

3. Award such other and further relief in any form that this Court deems just and proper under the facts and circumstances as proved at trial.

Respectfully submitted,

/s/Ala Abdelbaki
E-mail: aha3e1@gmail.com